# NEXT NO.

## H.R. 6786

EXHIBIT 1

(Original Signature of Member)

110TH CONGRESS
2D SESSION

# H. R. ______

To provide for the settlement of claims arising from the use and distribution of judgment funds previously awarded and provided to the Delaware Tribe of Indians, the Delaware Nation, the Kansas Delaware Tribe of Indians, Incorporated, and the Delawares of Idaho, Incorporated, to correct underpayment of certain funds, to provide for the settlement of accounting claims arising from, and otherwise achieve the requirements of, certain litigation, and for other purposes.

---

IN THE HOUSE OF REPRESENTATIVES

Mr. SULLIVAN introduced the following bill; which was referred to the Committee on ______________________

---

# A BILL

To provide for the settlement of claims arising from the use and distribution of judgment funds previously awarded and provided to the Delaware Tribe of Indians, the Delaware Nation, the Kansas Delaware Tribe of Indians, Incorporated, and the Delawares of Idaho, Incorporated, to correct underpayment of certain funds, to provide for the settlement of accounting claims arising from, and otherwise achieve the requirements of, certain litigation, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Delaware Judgment Funds Distribution Settlement Act of 2008".

**SEC. 2. DEFINITIONS.**

In this Act:

(1) CHEROKEE NATION.—The term "Cherokee Nation" means the Cherokee Nation, with its headquarters located in Tahlequah, Oklahoma.

(2) CHEROKEE NATION JURISDICTIONAL BOUNDARY.—The term "Cherokee Nation Jurisdictional Boundary" means the boundary surrounding lands within the Indian Territory that were ceded by the United States to the Nation pursuant to the Treaties of May 6, 1828, February 14, 1833, and December 29, 1835, 7 Stat. 478, the Indian Removal Act of 1830, 4 Stat. 411, and the fee patent executed by President Martin Van Buren on December 31, 1838, diminished only by sales under the Acts of February 28, 1877, 19 Stat. 265, June 2, 1886, 24 Stat. 121, March 3, 1893, ch. 209, 27 Stat. 612, 645, and Proclamation No. 5, 20 Stat. 1222 (1893), including any interpretation of that boundary under federal law or by courts of com-

petent jurisdiction, and shall also include those specific parcels of Indian lands of the Nation outside that boundary wherever or whenever acquired.

(3) DELAWARE NATION.—The term "Delaware Nation" means the Delaware Nation, Oklahoma (formerly known as the "Absentee Delaware Tribe of Western Oklahoma" and the "Western Delaware Tribe").

(4) DELAWARE TRIBE.—The term "Delaware Tribe" means the Delaware Tribe of Indians, Oklahoma (formerly known as the "Cherokee Delaware" and the "Eastern Delaware").

(5) EXISTING AUTHORITY.—The term "existing authority" means

(A) the first section of Public Law 87–283 (25 U.S.C. 164);

(B) Public Law 90–508 (25 U.S.C. 1181 et seq.);

(C) Public Law 92–456 (25 U.S.C. 1291 et seq.);

(D) Public Law 93–134 (25 U.S.C. 1401 et seq.);

(E) Public Law 96–318 (94 Stat. 968);

(F) the American Indian Trust Fund Management Reform Act of 1994 (25 U.S.C. 4001 et seq.); and

(G) any other provision of law (including regulations).

(4) HISTORICAL AREAS OF THE DELAWARE TRIBE.—The term "historical areas of the Delaware Tribe" means those counties outside Oklahoma on a list submitted by the Chief of the Delaware Tribe to the Assistant Secretary-Indian Affairs and those areas outside Oklahoma defined by treaties between the Delaware Nation and the United States.

(5) IDAHO DELAWARE.—The term "Idaho Delaware" means the Delawares of Idaho, Incorporated.

(6) INDIAN COUNTRY.—The term "Indian Country" means "Indian Country" as defined by Federal law.

(7) JOINT DELAWARE TRUST FUNDS.—The term "Joint Delaware Trust Funds" means—

(A) the trust fund accounts numbered JA9483106 and JA9480698 (including all interest on those accounts); and

(B) 63 percent of the trust fund account numbered JA9480102 as of the date of enact-

ment of this Act (including all interest on that portion of the account).

(8) KANSAS DELAWARE.—The term "Kansas Delaware" means the Kansas Delaware Tribe of Indians, Incorporated.

(9) LIST.—The term "List" means the list of tribal entities published in the Federal Register pursuant to section 104 of the Federally Recognized Indian Tribe List Act of 1994 (25 U.S.C. 479a-1)

(10) RESTRICTED LAND.—The term "Restricted land" means any land, the title to which is held in the name of an Indian or Indian tribe subject to restrictions by the United States against alienation.

(11) SECRETARY.—The term "Secretary" means the Secretary of the Interior.

(12) TRUST LAND.—The term "Trust land" means land, the title to which is held by the United States in trust for the benefit of an Indian tribe or individual.

(13) UNDISTRIBUTED DELAWARE TRIBE TRUST FUNDS.—The term "undistributed Delaware Tribe Trust Funds" means any amounts in the trust fund accounts numbered JA9484104, JA9484377,

JA9285105, and JA9285378 (including all interest on those accounts).

(14) UNDISTRIBUTED IDAHO DELAWARE TRUST FUNDS.—The term "undistributed Idaho Delaware Trust Funds" means the trust fund accounts numbered JA9483692, JA9483379, and JA9483015 (including all interest on those accounts).

(15) UNDISTRIBUTED KANSAS DELAWARE TRUST FUNDS.—The term "undistributed Kansas Delaware Trust Funds" means—

(A) the trust fund account numbered JA9480011 (including all interest on that account); and

(B) 37 percent of the trust fund account numbered JA9480102 as of the date of enactment of this Act (including all interest on that portion of the account).

(16) UNDISTRIBUTED PER CAPITA DISTRIBUTIONS TO CERTAIN DELAWARE TRIBE MEMBERS.—The term "undistributed per capita payments to certain Delaware Tribe members" means the trust fund accounts numbered JA9284108 and JA9284371 (including all interest on those accounts).

**SEC. 3. DELAWARE TRIBE TRUST FUNDS MISMANAGEMENT CLAIMS SETTLEMENT.**

Not later than 30 days after the date of enactment of this Act, the United States shall offer to file with the Delaware Tribe a joint motion for entry of judgment in the amount of $437,165 in Docket No. 02–26L in the United States Court of Federal Claims, as a full and final judicial settlement of all trust fund claims of the Delaware Tribe that were or could have been brought under that docket.

**SEC. 4. DISTRIBUTIONS TO TRIBES, ELIGIBLE MEMBERS, AND ENROLLEES.**

(a) IN GENERAL.—Notwithstanding existing authority, the Secretary shall carry out such actions as the Secretary determines to be necessary to satisfy any remaining monetary obligations identified in the judgment for the case styled Delawares of Idaho, Inc., et al. v. Clark, Civ. No. 83–1192 (D. Idaho) (October 2, 1984) and subsequent orders of that court.

(b) REQUIREMENTS.—

(1) DELAWARE TRIBE.—

(A) DEFINITION OF ELIGIBLE MEMBER.— In this paragraph, the term "eligible member" means a member of the Delaware Tribe identified as underpaid in the memorandum decision

and judgment of the case described in subsection (a).

(B) PAYMENTS UNDER CERTAIN AMOUNT.—The Secretary shall pay to the governing body of the Delaware Tribe for programming purposes each per capita payment of an eligible member or heir or legatee under this paragraph in an amount that is less than $5.

(C) REMAINING AMOUNTS.—Notwithstanding existing authority

(i) IN GENERAL.—Any amounts remaining on the date that is 1 year after the date on which 80 percent of the initial distributions under this paragraph have been made shall be provided to the governing body of the Delaware Tribe for programming purposes.

(ii) DETERMINATION.—No more than 1 series of per capita payments under this paragraph shall be required before determining that amounts remaining are eligible for distribution to the governing body of the Delaware Tribe under this subparagraph.

(2) KANSAS DELAWARE AND IDAHO DELAWARE.—

(A) DEFINITION OF ELIGIBLE ENROLLEE.—In this paragraph, the term "eligible enrollee" means an enrollee of the Kansas Delaware or the Idaho Delaware identified as underpaid in the memorandum decision and judgment of the case described in subsection (a).

(B) PAYMENTS UNDER CERTAIN AMOUNT.—Of each per capita payment of an eligible enrollee or heir or legatee under this paragraph in an amount that is less than $5, the Secretary shall pay, for programming purposes

(i) 19 percent of the amount to the Delaware Nation; and

(ii) 81 percent of the amount to the Delaware Tribe.

(C) REMAINING AMOUNTS.—Notwithstanding existing authority

(i) IN GENERAL.—Any amounts remaining on the date that is 1 year after the date on which 80 percent of the initial distributions under this paragraph have

been made shall be provided for programming purposes

(I) 17 percent to the Delaware Nation; and

(II) 83 percent to the Delaware Tribe.

(ii) DETERMINATION.—No more than 1 series of per capita payments under this paragraph shall be required before determining that amounts remaining are eligible for distribution to the governing bodies of those tribes under this subparagraph.

(c) CONSTRUCTION.—If any order of the court in the case described in subsection (a) issued prior to the date of enactment of this Act is inconsistent with a provision of subsection (c), the order of the court shall govern unless amended by the court.

**SEC. 5. DISTRIBUTION OF TRUST FUNDS.**

(a) IN GENERAL.—Notwithstanding existing authority, not later than 60 days after the date on which the motion filed under section 3 is granted, of amounts in the Joint Delaware Trust Funds, the Secretary shall

(1) distribute to the Delaware Nation 17 percent for programming purposes;

(2) implement a process to use 72 percent to make per capita distributions to members of the Delaware Tribe, in accordance with subsection (c); and

(3) implement a process to distribute to the Kansas Delaware and the Idaho Delaware 11 percent, in accordance with subsection (e).

(b) DEFINITION.—In this section, "update the roll" means using reasonable efforts to obtain current addresses for persons listed on the specified roll, to identify such persons who are deceased, and to ascertain the heirs and legatees of such deceased persons. Where this section permits the Secretary to contract the updating of a roll, some or all of these functions may be contracted.

(c) PER CAPITA DISTRIBUTIONS.—

(1) UPDATING ROLL.—

(A) IN GENERAL.—The Secretary shall implement a process to update, or offer to enter into a contract with the Delaware Tribe under which the Delaware Tribe shall update, the roll of members prepared by the Secretary under section 5(a)(2) of Public Law 96–318 (94 Stat. 968).

(B) CONTRACT REQUIREMENT.—Notwithstanding section 552a of title 5, United States

Code (Commonly known as the "Privacy Act of 1974"), or any other provision of law, if the Secretary enters into a contract with the Delaware Tribe under subparagraph (A), the Secretary may provide to the Delaware Tribe—

(i) the roll prepared by the Secretary under section 5(a)(2) of Public Law 96–318 (94 Stat. 968); and

(ii) any other information the Secretary determines to be necessary to carry out the contract.

(2) DISTRIBUTIONS.—

(A) DEFINITION OF ELIGIBLE MEMBER.— In this paragraph, the term "eligible member" means a member of the Delaware Tribe who is listed on the roll prepared under section 5(a)(2) of Public Law 96–318 (94 Stat. 968).

(B) ADULT MEMBERS.—The Secretary shall make per capita payments to eligible members aged 18 or older directly to the eligible members.

(C) DISABLED MEMBERS.—The Secretary shall make per capita payments to legally disabled eligible members in accordance with such procedures (including the establishment of

trusts) as the Secretary determines to be appropriate to protect the best interests of those eligible members.

(D) DECEASED ELIGIBLE MEMBERS.—The Secretary shall make any per capita payment owed to a deceased eligible member that is $100 or more to the appropriate living heirs and legatees in accordance with a summary distribution prepared by the Superintendent, Bureau of Indian Affairs, Muskogee, Oklahoma, that identifies those heirs or legatees who are living and located, and pay to the governing body of the Delaware Tribe for programming purposes (i) any portion owed to a deceased heir or legatee, and (ii) any per capita payment owed to a deceased eligible member that is less than $100. If the Secretary contracts the determination of heirs and legatees under paragraph (1)(B), the Superintendent may rely on the results under that contract.

(E) PAYMENTS UNDER CERTAIN AMOUNT.—The Secretary shall pay to the governing body of the Delaware Tribe for programming purposes each per capita payment of an

eligible member under this paragraph in an amount that is less than $20.

(F) REMAINING AMOUNTS.—Notwithstanding existing authority—

(i) IN GENERAL.—The Secretary shall provide to the governing body of the Delaware Tribe for programming purposes any amounts remaining on the date that is 1 year after the date on which the Secretary completes the initial distributions and transfers under this paragraph.

(ii) DETERMINATION.—The Secretary shall not be required to make more than 1 series of per capita payments under this paragraph before determining that amounts remaining are eligible for distribution to the governing body of the Delaware Tribe under this subparagraph.

(d) UNDISTRIBUTED DELAWARE TRIBE TRUST FUNDS.—Notwithstanding existing authority, not later than 60 days after the date on which the motion filed under section 3 is granted, the Secretary shall distribute to the governing body of the Delaware Tribe for programming purposes all amounts in the undistributed Delaware Tribe Trust Funds.

(e) UNDISTRIBUTED PER CAPITA DISTRIBUTIONS TO CERTAIN DELAWARE TRIBE MEMBERS.—

(1) DISTRIBUTIONS.—

(A) IN GENERAL.—Notwithstanding existing authority, not later than 60 days after the date on which the motion filed under section 3 is granted, the Secretary shall implement a process under which the Secretary shall—

(i) determine, based on available information, which members of the Delaware Tribe listed on the roll prepared under Public Law 92–456 (25 U.S.C. 1291 et seq.) did not receive a distribution; and

(ii) make the required per capita payments to those members in accordance with subsection (b)(2)(B)(E).

(B) REMAINING AMOUNTS.—Notwithstanding existing authority—

(i) IN GENERAL.—The Secretary shall provide to the governing body of the Delaware Tribe for programming purposes any amounts remaining on the date that is 1 year after the date on which the Secretary completes the initial distributions and transfers under this paragraph.

(ii) DETERMINATION.—The Secretary shall not be required to make more than 1 series of per capita payments under this paragraph before determining that amounts remaining are eligible for distribution to the governing body of the Delaware Tribe under this subparagraph.

(2) UPDATING ROLL.—

(A) IN GENERAL.—To the extent the Secretary determines to be necessary to carry out paragraph (1), the Secretary shall update, or offer to enter into a contract with the Delaware Tribe under which the Delaware Tribe shall update, the roll prepared by the Secretary under Public Law 92–456 (25 U.S.C. 1291 et seq.).

(B) CONTRACT REQUIREMENT.—Notwithstanding section 552a of title 5, United States Code ("commonly known as the"Privacy Act of 1974"), or any other provision of law, if the Secretary enters into a contract with the Delaware Tribe under subparagraph (A), the Secretary may provide to the Delaware Tribe—

(i) the roll prepared by the Secretary under Public Law 92–456 (25 U.S.C. 1291 et seq.); and

(ii) any other information the Secretary determines to be necessary to carry out the contract.

(e) UNDISTRIBUTED KANSAS DELAWARE TRUST FUNDS AND UNDISTRIBUTED IDAHO DELAWARE TRUST FUNDS.—

(1) UPDATING ROLL.—

(A) IN GENERAL.—To the extent necessary to fulfill the purposes of this Act, the Secretary shall implement a process to update the rolls, or offer to enter into contracts with the Idaho Delaware and the Kansas Delaware under which the Idaho Delaware and Kansas Delaware shall update their respective roll, prepared by the Secretary under paragraphs (1) and (3) of section 5(a) of Public Law 96–318 (94 Stat. 968).

(B) CONTRACT REQUIREMENT.—Notwithstanding section 552a of title 5, United States Code (commonly known as the "Privacy Act of 1974"), or any other provision of law, if the Secretary enters into a contract with the Idaho Delaware or the Kansas Delaware under subparagraph (A), the Secretary may provide to

the Idaho Delaware, the Kansas Delaware, or both—

(i) their respective roll prepared by the Secretary under paragraphs (1) and (3) of section 5(a) of Public Law 96–318 (94 Stat. 968); and

(ii) any other information the Secretary determines to be necessary to carry out the contract.

(2) DEFINITION OF ENROLLEE.—In this subsection, the term "enrollee" means a person who is listed on the rolls prepared under paragraph (1) or (3) of section 5(a) of Public Law 96–318 (94 Stat. 968).

(3) APPORTIONMENT.—Notwithstanding existing authority, of amounts in the undistributed Idaho Delaware Trust Funds and the undistributed Kansas Delaware Trust Funds, the Secretary shall distribute

(A) to the Delaware Tribe for programming purposes not later than 60 days after the date on which the motion filed under section 3 is granted, 37 percent of amounts in the trust fund account numbered JA9480102 as of the date of enactment of this Act (including inter-

est accruing on that account after that date) to correct payments erroneously made from an account of the Delaware Tribe to enrollees of the Kansas Delaware;

(B) to any appropriate attorney who makes a claim within 60 days to the Secretary, amounts set aside pursuant to Public Law 96–318 (94 Stat. 968) that are held in trust for attorney's fees as of the date of enactment of this Act and are determined to be owing by the Secretary;

(C) to enrollees of the Kansas Delaware, in accordance with paragraph (4)—

(i) 9.2 percent of the Joint Delaware Trust Funds; and

(ii) amounts remaining in the undistributed Kansas Delaware Trust Funds after making the distributions under subparagraphs (A) and (B); and

(D) to enrollees of the Idaho Delaware, in accordance with paragraph (4)—

(i) 1.8 percent of the Joint Delaware Trust Funds; and

(ii) amounts remaining in the undistributed Idaho Delaware Trust Funds

after making any distributions under subparagraph (B).

(4) PAYMENTS TO ENROLLEES.—

(A) ADULT ENROLLEES.—The Secretary shall make per capita payments under subparagraphs (C) and (D) of paragraph (3) to enrollees aged 18 or older directly to the enrollees.

(B) DISABLED ENROLLEES.—The Secretary shall make per capita payments under subparagraphs (C) and (D) of paragraph (3) to legally disabled enrollees in accordance with such procedures (including the establishment of trusts) as the Secretary determines to be appropriate to protect the best interests of those enrollees.

(C) DECEASED ENROLLEES.—The Secretary shall make any per capita payment owed to a deceased eligible enrollee under subparagraphs (C) and (D) of paragraph (3) that is $100 or more to the appropriate living heirs and legatees in accordance with a summary distribution prepared by the appropriate Superintendent, Bureau of Indian Affairs, that identifies those heirs or legatees who are living and located, and pay to the tribal governing bodies

pursuant to subparagraph (E)(i) for programming purposes, (i) any portion owed to a deceased heir or legatee, and, (ii) any per capita payment owed to a deceased eligible enrollee that is less than $100. If the Secretary contracts the determination of heirs and legatees under paragraph (1)(B), the Superintendent may rely on the results under that contract.

(D) PAYMENTS UNDER CERTAIN AMOUNT.—Of each per capita payment of an enrollee or heir or legatee under this paragraph in an amount that is less than $20, the Secretary shall pay, for programming purposes—

(i) 19 percent of the amount to the Delaware Nation; and

(ii) 81 percent of the amount to the Delaware Tribe.

(E) REMAINING AMOUNTS.—Notwithstanding existing authority—

(i) IN GENERAL.—Of any amounts remaining on the date that is 1 year after the date on which the Secretary completes the initial distributions and transfers under this paragraph, the Secretary shall pay, for programming purposes

(I) 17 percent to the Delaware Nation; and

(II) 83 percent to the Delaware Tribe.

(ii) DETERMINATION.—The Secretary shall not be required to make more than 1 series of per capita payments under this paragraph before determining that amounts remaining are eligible for distribution to the governing bodies of those tribes under this subparagraph.

(5) IDAHO DELAWARE ACTION.—

(A) The Idaho Delaware filed on May 25, 2007 an action in the United States District Court for the District of Idaho styled Delawares of Idaho, Inc. v. Kempthorne, No. 1:07-cv-00237, seeking a writ of mandamus compelling distributions of the amounts due the Idaho Delaware enrollees under this section.

(B) This section shall not obligate the Secretary to make any distribution or take any other action that would be duplicative of any distribution or action taken by the Secretary in that case voluntarily or pursuant to the Judgment and Order of June 26, 2008 or any other

order of the court issued prior to the date of enactment of this Act.

**SEC. 6. DELAWARE TRIBE RELATIONSHIP WITH THE UNITED STATES.**

(a) FINDING.—A December 3, 1940 letter of the Assistant Commissioner of Indian Affairs, approved by Assistant Secretary Oscar Chapman for the Department of the Interior on January 23, 1941, determined that the Delaware Tribe was eligible to organize as a distinct and separate tribe under the Oklahoma Indian Welfare Act.

(b) REORGANIZATION OF THE DELAWARE TRIBE BY THE DEPARTMENT OF THE INTERIOR.—If the Delaware Tribe elects to and is reorganized by the Secretary under section 3 of the Act of June 26, 1936 (25 U.S.C. 503)(commonly known as the "Oklahoma Indian Welfare Act"), thereby restoring its direct government-to-government relationship with the United States and being restored to the List, or is restored to the List by any other means, such restoration shall be subject to the following provisions:

(1) Any agreement (including future amendments thereto) made after January 1, 2007 between the Delaware Tribe and the Cherokee Nation addressing common issues of jurisdiction, federal funding, or land within the Cherokee Nation Jurisdic-

tional Boundary shall be binding upon Federal agencies unless otherwise prohibited by law. If waived in such an agreement, the sovereign immunity of the Delaware Tribe, as reorganized, shall not prevent the enforcement of such an agreement by the Cherokee Nation in any United States district court. Disputes regarding enforcement of such agreements arise under federal Indian law for purposes of federal court jurisdiction.

(2) The Secretary shall process a request to have land acquired in trust for general purposes within the historical areas of the Delaware Tribe as an on-reservation acquisition under 25 C.F.R. Part 151 or its equivalent under any successor regulation, if such consideration is expressly requested by the Delaware Tribe within 25 years of a reorganization of the Delaware Tribe by the Secretary under the Oklahoma Indian Welfare Act.

(3) No land within the Cherokee Nation Jurisdictional Boundary may be taken into trust or restricted status under any provision of law for the benefit of the Delaware Tribe without the written consent of the Cherokee Nation.

(4) Unless the Cherokee Nation and the Delaware Tribe agree otherwise in writing, the Delaware

Tribe shall have no tribal jurisdiction over any Indian Country within the Cherokee Nation Jurisdictional Boundary.

(5) The Delaware Tribe is entitled to participate in the Small Business Administration's 8(a) program with a new graduation period and without any penalty or negative consequences that might otherwise flow from its prior participation in the program.

**SEC. 7. CONSTRUCTION.**

(a) NO RECOGNITION OF CERTAIN DELAWARE ENTITIES.—Nothing contained in this Act shall be construed as recognizing the Kansas Delaware, the Kansas Delaware Tribe of Indians, Incorporated, the Idaho Delaware, or the Delawares of Idaho, Incorporated, as federally recognized tribes.

(b) NO OTHER TRIBAL INTEREST IN DELAWARE FUNDS.—Nothing in this Act shall be construed as providing any other tribe or the members of any other tribe who are not otherwise eligible members of the Delaware Tribe, or heirs or legatees of such members, with any interest in, or authority or jurisdiction over, any funds that are subject to sections 1 through 5 of this Act.

**SEC. 8. NO TAXATION OF DISTRIBUTIONS.**

None of the funds distributed per capita or made available for programming purposes under this Act shall be subject to Federal or State income taxes or be considered income or resources in determining eligibility for assistance under Federal, State, or local programs.

**SEC. 9. AUTHORIZATION OF APPROPRIATIONS.**

There are authorized to be appropriated such sums as are necessary to carry out this Act.